VIRGINIA:

IN THE CIRCUIT COURT OF FAIRFAX COUNTY

VINSYS INFORMATION )
TECHNOLOGY, INC. )
                                                                )
                              Plaintiff, )
                                                                )
              v. )
                                                                )
SYED SOHAIL IFTIKHAR )
                                                                )          Case No. CL-2013-18985
And )
                                                                )
ICONMA, LLC )
                                                                )
                              Defendants. )

## NOTICE OF REMOVAL TO FEDERAL COURT

PLEASE TAKE NOTICE that on January 29, 2014, Defendant ICONMA, LLC, by

counsel, filed with the United States District Court for the Eastern District of Virginia a Notice

of Removal of the above-captioned case to the District Court pursuant to 28 U.S.C. § 1332.  A

copy of all papers filed in the United States District Court for the Eastern District of Virginia is

attached as Exhibit 1.

Respectfully submitted,
ICONMA, LLC

Sean Patrick Roche, VSB No. 71412
Joanna L. Faust, VSB No. 72930
CAMERON McEVOY, PLLC
11325 Random Hills Road, Suite 200
Fairfax, Virginia 22030
(703) 460-9341 (Direct)
(703) 273-8898 (Main)
(703) 273-8897 (Facsimile)
sroche@cameronmcevoy.com
jfaust@cameronmcevoy.com
Counsel for ICONMA, LLC

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
703.273.8898 : 703.273.8897

Cameron/McEvoy

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic mail and first-class mail this 29th day of January, 2014, as follows:

Shawn C. Whittaker, Esquire
Whittaker & Associates, P.C.
1010 Rockville Pike, Suite 607
Rockville, MD 20852
shawn@whittaker-law.com
*Counsel for Plaintiff*

Syed Sohail-Iftikhar
485 Pringle Drive, Unite #18
Milton, Ontario L9T 0J2
*Defendant*

Joanna L. Faust

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
703.273.8898   ·.· 703.273.8897

Cameron/McEvoy
·.·

2

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic mail and first-class mail this 29th day of January, 2014, as follows:

Shawn C. Whittaker, Esquire
Whittaker & Associates, P.C.
1010 Rockville Pike, Suite 607
Rockville, MD 20852
shawn@whittaker-law.com
*Counsel for Plaintiff*

Syed Sohail-Iftikhar
485 Pringle Drive, Unite #18
Milton, Ontario L9T 0J2
*Defendant*

Joanna L. Faust

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
T: 703.273.8898   F: 703.273.8897

Cameron / McEvoy
PLLC

-4-

**SPS**

COMMONWEALTH OF VIRGINIA
***CIRCUIT COURT OF FAIRFAX COUNTY***
4110 CHAIN BRIDGE ROAD
FAIRFAX, VIRGINIA 22030
703-691-7320
(Press 3, Press 1)

**Vinsys Information Technology Inc  vs.  Syed Sohail Iftikhar, etal.**

CL-2013-0018985

TO:   **ICONMA LLC**
Serve: c/o Leif K. Anderson, Esq.
Newman Anderson, P.C.
401 South Old Woodward, Ste. 460
Birmingham MI  48009

### SUMMONS – CIVIL ACTION

The party upon whom this summons and the attached complaint are served is hereby
notified that unless within  21 days after such service, response is made by filing in the
Clerk's office of this Court a pleading in writing, in proper legal form, the allegations and
charges may be taken as admitted and the court may enter an order, judgment or decree
against such party either by default or after hearing evidence.

**APPEARANCE IN PERSON IS NOT REQUIRED BY THIS SUMMONS.**
Done in the name of the Commonwealth of Virginia, on Thursday, December 26, 2013.

JOHN T. FREY, CLERK

By: _Deisy M. Esperez_
**Deputy Clerk**

**Plaintiff's Attorney:**   Shawn C Whittaker



VIRGINIA:

## IN THE CIRCUIT COURT FOR FAIRFAX COUNTY

VINSYS INFORMATION TECHNOLOGY, INC.          :
12020 Sunrise Valley Drive                   :
Suite 100                                    :
Reston, Virginia 20191                       :
                                             :
    Plaintiff,                          :
                                             :          2013-18985
    v.                                   :     Case No.:
                                             :
SYED SOHAIL IFTIKHAR                          :
485 Pringle Drive, Unit #18                  :
Milton, Ontario L9T0J2                       :
                                             :
    Serve:   Leif K. Anderson, Esq.      :
    Neuman Anderson, P.C.                :
    401 South Old Woodward, Ste. 460     :
    Birmingham, MI 48009                 :
                                             :
and                                          :
                                             :
ICONMA, LLC                                  :
850 Stephenson Highway, Ste. 612             :
Troy, MI 48083                               :
                                             :
    Serve:   c/o Leif K. Anderson, Esq.  :
    Neuman Anderson, P.C.                :
    401 South Old Woodward, Ste. 460     :
    Birmingham, MI 48009                 :
                                             :
    Defendant(s).                        :

## COMPLAINT

    COMES NOW the Plaintiff Vinsys Information Technology, Inc. (hereinafter "Vinsys"), by and through counsel Shawn C. Whittaker and Whittaker & Associates, P.C., and submits this Complaint against Defendants Syed Sohail Iftikhar (hereinafter "Iftikhar"),

COMPLAINT - 1

and ICONMA, LLC (hereinafter "ICONMA"), and as such states as follows:

## PARTIES AND JURISDICTION

1.  Vinsys is a Virginia corporation located at 12020 Sunrise Valley Drive, Suite 100, Reston, Virginia 20191. Vinsys is an information technology consulting firm that provides personnel for information technology projects.

2.  ICONMA is a Michigan corporation registered to do business in Virginia and which is located at 850 Stephenson Highway, Ste. 612, Troy, MI 48083. ICONMA is an information technology consulting firm that provides personnel for information technology projects.

3.  Iftikhar is an individual residing at 485 Pringle Drive, Unit #18, Milton, Ontario L9T0J2 who contracted with Vinsys to work on a Project known as the Capital One Project (hereinafter "Project").

4.  The Court has jurisdiction over this action pursuant to Va. Code Ann. § 8.01-328.1(A).

## FACTS RELATED TO ALL COUNTS

5.  Vinsys incorporates the preceding allegations as if fully set forth herein and further states the following:

6.  On March 15, 2012 Iftikhar contacted Vinsys regarding possible employment opportunities. *See email attached as Ex. 1.*

WHITTAKER & ASSOCIATES, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301 838 4502 / Fax: 301 838 4505

7.   Thereafter, Vinsys posted Iftikhar's resume on various employment sites.

8.   On March 28, 2012, ICONMA contacted Vinsys regarding Iftikhar's rates for the Project. *See email attached as Ex. 2.*

9.   Vinsys informed ICONMA that Iftikhar's hourly rate was $72.00 per hour.

10.   Iftikhar then interviewed with Capitol One who approved Iftikhar for the Project. *See email attached as Ex. 3.*

11.   On April 4, 2012, Iconma sent Vinsys a draft Contract for Vinsys to provide consulting services to Iconma on the Project. *See email and contract attached collectively as Ex. 4.*

12.   In the Consulting Services Addendum, ICONMA stated that Vinsys could only receive a 21% markup. *See Ex. 4 at Consulting Services Addendum.*

13.   However, Vinsys did not agree to the "Markup Compliant Clause" stating that Vinsys' rates with its employees were confidential. *See email attached as Ex. 5.*

14.   However, upon ICONMA's continued requests, Vinsys provided Iftikhar's rates to ICONMA

15.   Vinsys informed ICONMA that Vinsys had to receive 30% of the hourly rate.

16.   On April 4, 2012, Iftikhar signed an Acceptance Letter with Vinsys to work for Vinsys on the Project (hereinafter "Acceptance Letter"). *See Acceptance Letter attached as Exhibit 6.*

WHITTAKER & ASSOCIATES, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852

17.   The Acceptance Letter included a provision stating "[f] or a period of one year following the date of the joining or the last date of his Services at the client, [Iftikhar] shall not directly or indirectly approach [INCONMA] or end client for business or employment." *See Exhibit 6.*

18.   The Acceptance Letter stated that Vinsys would compensate Iftikhar at the rate of $50.00 per hour. *See Exhibit 6.*

19.   After Iftikhar executed the Acceptance Letter, Vinsys sent the U.S. Immigration and Naturalization Service a letter attempt to obtain authorization for Iftikhar to work in the U.S. *See letter attached as Ex. 7.*

20.   On April 6, 2012, ICONMA approved the 30% mark-up and requested Vinsys' revisions to the contract. *See email attached as Ex. 8.*

21.   Vinsys and ICONMA agreed that ICONMA would compensate Vinsys at a rate of $72.00 per hour for consulting services provided by Vinsys to ICONMA. *See Ex. 4 at Consulting Services Addendum.*

22.   Without Vinsys' knowledge and while Vinsys was negotiating with ICONMA, Iftikhar entered into discussions with ICONMA to work directly with ICONMA.

23.   Without Vinsys' knowledge, on April 5, 2012, ICONMA sent Iftikhar a contract for Iftikhar to work for Iftikhar directly on

COMPLAINT - 4

WHITTAKER & ASSOCIATES, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

the Project and pay Iftikhar $55.00 per hour.   *See email and contract attached as Ex. 9.*

24.   ICONMA quit communicating with Vinsys.

25.   ICONMA hired Iftikhar directly to work for ICONMA.

26.   Upon information and belief, Iftikar continues to work for ICONMA on the Project.

27.   Due to Iftikhar and ICONMA's wrongful actions, Vinsys lost profits of $22.00 per hour for the duration of Iftikhar's employment on the Project, which Vinsys expected to be 2 years at 2080 hours per year.

28.   Due to ICONMA's and Iftikhar's wrongful actions, Vinsys lost profits of $91,520.00.

29.   On April 18, 2012, Vinsys, through counsel, sent a letter to Iftikhar, ICONMA, and Capital One reminding the parties of Iftikhar's contract with Vinsys.   *See letter dated April 18, 2012 attached as Exhibit 10.*

30.   Despite the April 18, 2012 notice, Iftikhar and ICONMA continued to work directly on the Project.

31.   Upon information and belief, ICONMA was aware of Iftikar's Acceptance Letter with Vinsys prior to the April 18, 2012 letter.

32.   ICONMA only learned of Iftikhar through Vinsys.

33.   Iftikhar only learned of ICONMA through Vinsys.

WHITTAKER & ASSOCIATES, PC
1010 Rockville Pike – Suite 607

34. Iftikhar and ICONMA wrongfully acted in concert to work directly together and remove Vinsys from the Project.

35. Iftikhar and ICONMA both knew that contracting directly with each other and removing Vinsys from the Project would harm Vinsys.

36. Vinsys informed ICONMA that its rates with Iftikhar were confidential.

37. After obtaining the rates from Vinsys, ICONMA agreed to pay Iftikhar more per hour than Vinsys but less than what ICONMA contracted to pay Iftikhar.

38. Iftikhar's and ICONMA's actions were intentional, purposeful, and willful.

**COUNT I**
**BREACH OF CONTRACT**
**(AS TO IFTIKHAR)**

39. Vinsys incorporates the preceding allegations as if fully stated herein and further states the following:

40. On April 4, 2012, Vinsys and Iftikhar signed a valid and binding agreement in the form of an Acceptance Letter. *See Exhibit 2.*

41. The Acceptance Letter included a provision stating "[f] or a period of one year following the date of the joining or the last date of his Services at the client, [Iftikhar] shall not directly or indirectly approach [INCONMA] or end client for business or employment."

COMPLAINT - 6

WHITTAKER & ASSOCIATES, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker.law.com

42.  Upon information and belief, Iftikhar approached ICONMA to work directly for ICONMA.

43.  Upon information and believe, Iftikhar worked directly with ICONMA.

44.  In meeting with ICONMA directly and accepting a position with ICONMA, Iftikhar breached his contract with Vinsys.

45.  Vinsys performed pursuant to the parties' Agreement by finding Vinsys a position on the Project.

46.  Vinsys has been harmed as a result of Iftikhar's breaches of contract in an amount in excess of $91,520.00.

47.  Pursuant to the terms of the Acceptance Letter, Vinsys is entitled to recover its attorneys' fees.

WHEREFORE, the Plaintiff Vinsys Information Technology, Inc. prays for judgment against Defendant Syed Iftikhar for:

(a)  Compensatory damages of $91,520.00;

(b)  Attorneys' fees;

(c)  Preliminary and permanent injunctive relief;

(d)  Costs of the action; and

(e)  For such other and further relief as the Court may deem just and proper.

### COUNT II
### BREACH OF CONTRACT
### (AS TO ICONMA)

48.  Vinsys incorporates Paragraphs 1-38 as if fully stated herein and further states the following:

COMPLAINT - 7

WHITTAKER & ASSOCIATES, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

49.   On March 28, 2012, ICONMA contacted Vinsys regarding Iftikhar's rates for the Project.

50.   Vinsys informed ICONMA that Iftikhar's hourly rate was $72.00 per hour.

51..   Iftikhar then interviewed with Capitol One who approved Iftikhar for the Project.

52.   On April 4, 2012, Iconma sent Vinsys a draft Contract for Vinsys to provide consulting services to Iconma on the Project.

53.   In the Consulting Services Addendum, ICONMA stated that Vinsys could only receive a 21% markup.

54.   However, Vinsys did not agree to the "Markup Compliaint Clause" stating that Vinsys' rates with its employees were confidential.

55.   However, upon ICONMA's continued requests, Vinsys provided Iftikhar's rates to ICONMA

56.   Vinsys informed ICONMA that Vinsys had to receive 30% of the hourly rate.

57.   On April 6, 2012, ICONMA approved the 30% mark-up and requested Vinsys' revisions to the contract.

58.   Vinsys and ICONMA agreed that ICONMA would compensate Vinsys at a rate of $72.00 per hour for consulting services provided by Vinsys to ICONMA.

59.   Despite the parties' Agreement, ICONMA hired Iftikhar directly breaching the parties' agreement.

COMPLAINT - 8

60.   Due to ICONMA's breaches of the parties' Agreement, Vinsys lost profits of $91,520.00.

WHEREFORE, the Plaintiff Vinsys Information Technology, Inc. prays for judgment against Defendant ICONMA, LLC for:

(a)   Compensatory damages of $91,520.00;

(b)   Costs of the action; and

(c)   For such other and further relief as the Court may deem just and proper.

### COUNT III
### UNJUST ENRICHMENT
### (AS TO IFTIKHAR)

61.   Vinsys incorporates Paragraphs 1-38 as if fully stated herein and further states the following:

62.   Iftikhar sought employment through Vinsys.

63.   Pursuant to Iftikhar's requests, Vinsys circulated Iftikhar's resume and found employment for Iftikhar.

64.   Vinsys conveyed a benefit on Iftikhar.

65.   Iftikhar had an appreciation and knowledge of the benefit.

66.   Iftikhar accepted the benefit under such circumstances as to make it inequitable and/or unjust for Iftikhar to retain such benefit without compensating to Vinsys.

67.   The reasonable value of the benefit to Iftikhar is an amount in excess of $91,520.00.

COMPLAINT - 9

WHITTAKER & ASSOCIATES, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505

WHEREFORE, the Plaintiff Vinsys Information Technology, Inc. prays for judgment against Defendant Syed Iftikhar for:

(a)  Compensatory damages of $91,520.00;

(b)  Costs of the action; and

(c)  For such other and further relief as the Court may deem just and proper.

### COUNT IV
### UNJUST ENRICHMENT
### (AS TO ICONMA)

68.  Vinsys incorporates Paragraphs 1-38 as if fully stated herein and further states the following:

68.  ICONMA contacted Vinsys to obtain a resource to work on the Project.

69.  Pursuant to ICONMA's requests, Vinsys provided Iftikhar's resume to Iftikhar and provided Iftikar for an interview.

70.  ICONMA approved Iftikhar for employment on the Project.

71.  Vinsys conveyed a benefit on ICONMA.

72.  ICONMA had an appreciation and knowledge of the benefit.

73.  ICONMA accepted the benefit under such circumstances as to make it inequitable and/or unjust for ICONMA to retain such benefit without compensating Vinsys.

74.  The reasonable value of the benefit to ICONMA is an amount in excess of $91,520.00.

COMPLAINT - 10

~~WHEREFORE, the Plaintiff Vinsys Information Technology, Inc.~~

prays for judgment against Defendant ICONMA, LLC for:

(a)   Compensatory damages of $91,520.00;

(b)   Costs of the action; and

(c)   For such other and further relief as the Court may deem just and proper.

## COUNT V
## TORTIOUS INTERFERENCE WITH CONTRACT
## (AS TO ICONMA)

75.   Vinsys incorporates Paragraphs 1-38 as if fully stated herein and further states the following:

76.   Iftikhar signed a valid binding contractual agreement with Vinsys.

77.   Vinsys introduced Iftikhar to ICONMA as a potential candidate to work on the Project.

78.   ICONMA knew that Iftikhar had a contractual agreement with Vinsys.

79.   ICONMA knew that Iftikhar had a contractual agreement with Vinsys which prevented Iftikhar from "directly or indirectly approach[ing]" ICONMA for "business or employment".

80.   Despite ICONMA's knowledge of Iftikhar's contractual relationship with Vinsys, ICONMA hired Iftikhar directly.

81.   ICONMA caused Iftikhar to breach his contract with Vinsys.

COMPLAINT - 11

82.  By  contracting  directly  with  Iftikhar,  ICONMA intentionally interfered with Vinsys' contract with Iftikhar.

83.  In  interfering  with  Vinsys'  contract  with  Iftikhar, ICONMA  used  improper  methods,  including  but  not  limited misrepresentation,  fraud,  misusing  confidential  information, unethical conduct, violating standards of a trade or profession, and unfair competition.

84.  ICONMA's conduct was unlawful, outrageous and egregious.

85.  ICONMA acted with evil motive, actual malice, and willful disregard for Vinsys' rights.

86.  Vinsys  has  been  harmed  as  a  result  of  ICONMA's interference with Vinsys' contract with Iftikhar in an amount in excess of $91,520.00.

WHEREFORE,  the  Plaintiff Vinsys Information Technology,  Inc. prays for judgment against Defendant ICONMA, LLC for:

(a)  Compensatory damages of $91,520.00;

(b)  Punitive damages of $274,560.00;

(c)  Costs of the action; and

(d)  For such other and further relief as the Court may deem just and proper.

### COUNT V
### TORTIOUS INTERFERENCE WITH CONTRACT
### (AS TO IFTIKHAR)

87.  Vinsys incorporates Paragraphs 1-38 as if fully stated herein and further states the following:

COMPLAINT - 12

WHITTAKER & ASSOCIATES, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker law.com

88.   ICONMA had a contractual agreement with Vinsys.

89.   Vinsys introduced Iftikhar to ICONMA as a potential candidate to work on the Project.

90.   Iftikhar knew that ICONMA had a contractual agreement with Vinsys.

91.   Despite Iftikhar's knowledge of ICONMA's contractual relationship with Vinsys, ICONMA hired Iftikhar directly.

92.   ICONMA caused Iftikhar to breach his contract with Vinsys.

93.   By contracting directly with Iftikhar, Iftikhar intentionally interfered with Vinsys' contract with Iftikhar.

94.   In interfering with Vinsys' contract with ICONMA, Iftikhar used improper methods, including but not limited misrepresentation, fraud, misusing confidential information, unethical conduct, violating standards of a trade or profession, and unfair competition.

95.   Iftikhar's conduct was unlawful, outrageous and egregious.

96.   Iftikhar acted with evil motive, actual malice, and willful disregard for Vinsys' rights.

97.   Vinsys has been harmed as a result of Iftikhar's interference with Vinsys' contract with ICONMA in an amount in excess of $91,520.00.

WHITTAKER & ASSOCIATES, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

WHEREFORE, the Plaintiff Vinsys Information Technology, Inc. prays for judgment against Defendant ICONMA, LLC for:

(a)   Compensatory damages of $91,520.00;

(b)   Punitive damages of $274,560.00;

(c)   Costs of the action; and

(d)   For such other and further relief as the Court may deem just and proper.

## COUNT VI
## TORTIOUS INTERFERENCE WITH CONTRACT EXPECTANCY/PROSPECTIVE BUSINESS RELATIONSIP, OR ECONOMIC ADVANTAGE
## (AS TO IFTIKHAR)

98.   Vinsys incorporates Paragraphs 1-38 as if fully stated herein and further states the following:

99.   There was a contract expectancy, prospective business relationship, and/or economic advantage between Vinsys and ICONMA.

100. There was a reasonable probability of future economic benefit to Vinsys from the contract expectancy, prospective business relationship, and/or economic advantage.

101. Iftikhar knew of Vinsys' contract expectancy, prospective business relationship, and/or economic advantage as INCONMA was specifically identified in the Acceptance Letter.

102. Iftikhar interfered with Vinsys' contract expectancy, prospective business relationship, and/or economic advantage with ICONMA.

COMPLAINT - 14

WHITTAKER & ASSOCIATES, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505

103. In interfering with Vinsys' contract expectancy, prospective business relationship, and/or economic advantage with ICONMA, Iftikahr used improper methods, including but not limited misrepresentation, fraud, misusing confidential information, unethical conduct, violating standards of a trade or profession, and unfair competition.

104. Iftikhar knew that his methods in interfering with Vinsys' contract expectancy, prospective business relationship, and/or economic advantage were improper as he had signed the Acceptance Letter agreeing to not indirectly or directly approach ICONMA.

105. Iftikhar intended to interfere with Vinsys' contract expectancy.

106. If Iftikhar had not contacted ICONMA directly, it is reasonably certain that the business relationship between Vinsys and ICONMA would have continued.

107. Iftikhar's interference with Vinsys' contract expectancy, prospective business relationship, and/or economic advantage with ICONMA resulted in ICONMA working directly with Iftikhar, which resulted in a loss of profits for Vinsys.

108. Vinsys has been harmed as a result of Iftikhar's interference in an amount in excess of $91,520.00.

109. Iftikhar's conduct was unlawful, outrageous and egregious.

COMPLAINT - 15

WHITTAKER & ASSOCIATES, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505
shawn@whittaker-law.com

110. Iftikhar acted with evil motive, actual malice, and willful disregard for Vinsys' rights.

WHEREFORE, the Plaintiff Vinsys Information Technology, Inc. prays for judgment against Defendant Syed Iftikhar for:

    (a)   Compensatory damages of $91,520.00;

    (b)   Punitive damages of $274,560.00;

    (c)   Costs of the action; and

    (d)   For such other and further relief as the Court may deem just and proper.

## COUNT VII
### TORTIOUS INTERFERENCE WITH CONTRACT EXPECTANCY/PROSPECTIVE BUSINESS RELATIONSIP, OR ECONOMIC ADVANTAGE
### (AS TO ICONMA)

111. Vinsys incorporates Paragraphs 1-38 as if fully stated herein and further states the following:

112. There was a contract expectancy, prospective business relationship, and/or economic advantage between Vinsys and Iftikhar.

113. There was a reasonable probability of future economic benefit to Vinsys from the contract expectancy, prospective business relationship, and/or economic advantage with Iftikhar.

114. ICONMA knew of Vinsys' contract expectancy, prospective business relationship, and/or economic advantage as ICONMA learned of Iftikhar through Vinsys.

COMPLAINT - 16

115. ICONMA interfered with Vinsys' contract expectancy, prospective business relationship, and/or economic advantage with Iftikhar.

116. In interfering with Vinsys' contract expectancy, prospective business relationship, and/or economic advantage with Iftikhar, ICONMA used improper methods, including but not limited misrepresentation, fraud, misusing confidential information, unethical conduct, violating standards of a trade or profession, and unfair competition.

117. ICONMA knew that its methods in interfering with Vinsys' contract expectancy, prospective business relationship, and/or economic advantage were improper.

118. ICONMA intended to interfere with Vinsys' contract expectancy.

119. If ICONMA had not contacted Iftikhar directly, it is reasonably certain that the business relationship between Vinsys and Iftikhar would have continued.

120. ICONMA's interference with Vinsys' contract expectancy, prospective business relationship, and/or economic advantage with Iftikhar resulted in ICONMA working directly with Iftikhar and not contracting with Vinsys for the Project, which resulted in a loss of profits for Vinsys.

121. Vinsys has been harmed as a result of ICONMA's interference in an amount in excess of $71,280.00.

COMPLAINT - 17

122. ICONMA's conduct was unlawful, outrageous and egregious.

123. ICONMA acted with evil motive, actual malice, and willful disregard for Vinsys' rights.

WHEREFORE, the Plaintiff Vinsys Information Technology, Inc. prays for judgment against Defendant ICONMA, LLC for:

(a)   Compensatory damages of $91,520.00;

(b)   Punitive damages of $274,560.00;

(c)   Costs of the action; and

(d)   For such other and further relief as the Court may deem just and proper.

**COUNT VIII**
**VIOLATION OF VIRGINIA CIVIL BUSINESS CONSPIRACY STATUTE**
**VA. CODE ANN. § 18.2-499, ET SEQ.**
**(AS TO ICONMA AND IFTIKHAR)**

124. Vinsys incorporates the preceding allegations as if fully stated herein and further states the following:

125. ICONMA and Iftikhar participated in a concerted action to remove Vinsys from the Project and for ICONMA to work directly with Iftikhar.

126. ICONMA and Iftikhar acted together to harm Vinsys' business.

127. ICONMA and Iftikhar's conduct was unlawful, outrageous and egregious.

128. ICONMA and Iftikhar acted with evil motive, actual malice, and willful disregard for Vinsys' rights.

COMPLAINT - 18

WHITTAKER & ASSOCIATES, PC
1010 Rockville Pike – Suite 607
Rockville, MD 20852
Tel: 301.838.4502 / Fax: 301.838.4505

129. Vinsys has been damaged due to ICONMA and Iftikhar's wrongful conduct.

130. Vinsys was harmed in the amount of $91,520.00.

WHEREFORE, the Plaintiff Vinsys Information Technology, Inc. prays for judgment against Defendants ICONMA, LLC and Syed Iftikhar, jointly and severally, for:

(a)   Compensatory damages of $91,520.00;

(b)   Treble damages of $274,560.00;

(c)   Reasonable attorneys' fees;

(d)   Injunctive relief, pendente lite and permanent;

(e)   Costs of the action; and

(f)   Such other and further relief as the Court may deem just and proper.

## COUNT IX
### PRELIMINARY AND PERMANENT INJUNCTION
### (AS TO IFTIKHAR)

131. Vinsys incorporates Paragraphs 1-38 as if fully stated herein and further states the following:

132. Iftikhar signed an agreement with Vinsys agreeing in the event of breach, Vinsys was entitled to temporary and permanent injunctive relief.

133. Vinsys will suffer irreparable harm if ICONMA and Iftikhar continue to work together in violation of Iftikhar's agreement with Vinsys.

COMPLAINT - 19

~~134. Monetary relief will not fully compensate Vinsys for~~
Iftikhar's wrongful actions.

135. There is a strong public policy in enforcing agreements and promoting fair and ethical business practices.

WHEREFORE, the Plaintiff Vinsys Information Technology, Inc. requests the Court:

(a) Enjoin Defendant Syed Iftikhar from working with ICONMA, LLC; and

(b) Any other remedy this Court deems just and proper.

**JURY DEMAND**

The Plaintiff requests a jury on all issues triable of right by a jury.

Respectfully submitted,

Shawn C. Whittaker
VA Bar # 44653
Whittaker & Associates, P.C.
1010 Rockville Pike, Suite 607
Rockville, MD 20852
(301)838-4502
(301)838-4505 (Fax)
shawn@whittaker-law.com

COMPLAINT - 20

## Shawn Whittaker

| | |
|---|---|
| **From:** | Vinsys [schanamolu@vinsysinfo.com] |
| **Sent:** | Monday, November 11, 2013 9:53 PM |
| **To:** | Shawn Whittaker |
| **Cc:** | alan@vinsysinfo.com |
| **Subject:** | FW: Syed From Toronto(Asif's relative) |

FYI

**From:** Syed Iftikhar [mailto:syedifti@hotmail.com]
**Sent:** Thursday, March 15, 2012 6:58 PM
**To:** schanamolu@vinsysinfo.com
**Subject:** RE: Syed From Toronto(Asif's relative)

Hello Sridhar,
    I was wondering if you have any positions open for vmware administrator? I am currently working for vmware and have recently finished my VCP4 and VCP5 and currently working on vCAP4-DCD and vCAP4-DCA. If you have any open positions, please let me know. My direct number is 289-772-6040. Once job is confirmed, I will give you my references from inside the vmware.
Thanks. SYED IFTIKHAR syedifti@hotmail.com



**From:** schanamolu@vinsysinfo.com
**To:** syedifti@hotmail.com
**Subject:** RE: Syed From Toronto(Asif's relative)
**Date:** Sat, 30 Apr 2011 15:09:03 -0400

Syed,

I didn't get the resume from you. Let me know

Sreedhar Chanamolu,
Vinsys Information Technology Inc.
schanamolu@vinsysinfo.com
www.vinsysinfo.com
703-371-4120 (Mobile)
703-880-7557 (Fax)

**From:** Syed Iftikhar [mailto:syedifti@hotmail.com]
**Sent:** Monday, April 25, 2011 7:40 PM
**To:** 'Vinsys'
**Subject:** RE: Syed From Toronto(Asif's relative)

Yes. Very similar. ESX is getting outdated now. We encourage customers to upgrade to ESXi and 4.1 is the latest version. 5 is coming out very soon. vSphere client is only used to manage ONE host. In regular production enviro normally encounter vCenter Server with 100's of hosts(Each host means one Physical machine that has installed on it). But each machine/Server must have VT technology ability which it depends on the Proc



Alan,

I would like to inquire about Syed's rate. I have a contract opening with my direct client capital one in Laurel, MD that he looks like an excellent fit for. Please get back to me and let me know ASAP so we can get him submitted for this role.

Thanks,

Chris Williams
Technical Recruiter

Ph:      (817) 751-5743
Email:   cwilliams@iconma.com
Website: www.iconma.com



Case 1:14-cv-00100-GBL-TCB   Document 1-1   Filed 01/29/14   Page 27 of 55 PageID# 30



Syed,

Here is the information for your interview with Capital One on Monday 4/1 at 2:00 pm EST. This will be a conference call, capital one will not be calling you. Please dial into the conference line below about 2 minutes before your interview, I will be on the line to introduce then I will drop off. The interview should take 45 minutes or so and will be with the hiring manager. Please email me back and let me know you have received this message.

**When:** Monday 4/1/13 at 2:13pm EST
**Bridge One:** 0147266542 conference code: 65787259

Thanks,

Chris Williams
Technical Recruiter
ICONMA
Ph:     (817) 751-5743
Email:  cwilliams@iconma.com

**From:** Alan Vinyard [mailto:alan@datacenter.com]
**Sent:** Wednesday, March 28, 2013 4:54 PM
**To:** cwilliams@iconma.com
**Subject:** RE: Syed Iftikhar

Hi Williams,

Please confirm Syed hourly rate as 72/hr on c2c.

Please let me know.

2)   Iconam Has Scheduled Interview for Syed. Syed got selected with capital One interview.



PLAINTIFF'S
EXHIBIT



3)  Kim Mexico has send us contract for Syed..





| Initials | |
|---|---|

# VENDOR CONTRACT

This Vendor Contract ("hereinafter referred to as Agreement") is entered into on <u>April 4, 2012</u> between ICONMA, LLC (hereinafter referred to as "ICONMA") with its principal place of business at 850 Stephenson Highway, Suite 612, Troy, MI 48083 and <u>Vinsys Information Technology Inc.</u> ("hereinafter referred to as Contractor") with its principal place of business at <u>12020 Sunrise Valley Drive, Suite 100, Reston, VA 20191.</u>

WHEREAS, ICONMA is involved in the highly competitive business of software development, information technology consulting, and recruiting and supplying engineers, programmers, computer consultants, management consultants, technical, data processing and other technical personnel (hereinafter referred to as "CONSULTING SERVICES") on a contract and contract to hire basis to various businesses, and organizations; and

WHEREAS, ICONMA has entered into an agreement to provide CONSULTING SERVICES to a customer/client of ICONMA's (hereinafter referred to as "CLIENT"); and

WHEREAS, ICONMA wishes to engage Contractor as an independent contractor to perform CONSULTING SERVICES on behalf of ICONMA for the CLIENT; and

WHEREAS, Contractor wishes to perform such services as and independent contractor to ICONMA;

THEREFORE, in consideration of the mutual promises contained herein, ICONMA and Contractor agree as follows:

## Article I.    Services to be Performed

ICONMA hereby retains Contractor to perform CONSULTING SERVICES for ICONMA or its CLIENT pursuant to the Consulting Services Addendum attached hereto.

## Article II.    Immigration Laws Compliance

### Section 2.01

Contractor warrants, represents, covenants and agrees that it will not assign to perform services under this Agreement any individual who is an unauthorized alien under the Immigration Reform and Control Act of 1986 or its implementing regulations. In the event any Contractor employee working under this Agreement is discovered to be an unauthorized alien, Contractor will immediately remove such individual from performing services hereunder and replace such individual with an individual who is not an unauthorized alien. Contractor shall indemnify and hold harmless ICONMA and its clients from and against any and all liabilities, damages, losses, claims or expenses (including attorney fees) arising out of any breach by Contractor of this section.

| Initials | |
|----------|--|

Section 2.02

If the individual provided by the Contractor to render the CONSULTING SERVICES (hereinafter referred to as "Consultant") is on H1-B status, it is the sole responsibility of Contractor to provide written proof of status prior to the start date for the engagement with the CLIENT and Contractor must be the Petitioner of said Consultant's H1-B. Contractor shall be solely responsible for maintaining the Consultant's H1-B, including faithful adherence to all Immigration and Naturalization Service rules and regulations.

## Article III. Fees

### Section 3.01
ICONMA shall pay Contractor on an hourly basis per approved Consultant hour worked. The Consultant time worked must be approved by the CLIENT on a time sheet signed by the CLIENT. Some CLIENT's may required time to be submitted and approved through their Web Based System.  Overtime hours (over 40 hours per week) will be paid based on the hourly rate listed on the Addendum (Statement of Work).

### Section 3.02
Contractor shall send an invoice to ICONMA on a bi-weekly basis for each Consultant.  Payment shall be deposited with the United States Postal Service for delivery by first class mail within 30 days of receipt of invoice.  CLIENT approved billable time sheets are a condition precedent to payment by ICONMA to Contractor for each Consultant.  In the event of non-payment by CLIENT, for any reason, ICONMA shall have no liability to Contractor for the period of time at issue.  Contractor agrees to return any funds paid by ICONMA for this disputed time period. ICONMA will not accept or make any payments against any improperly submitted invoices.  ICONMA is not liable for payment in the event that the invoice is initially submitted to ICONMA more than sixty days after the week-ending date of that invoicing period.  Payments on pending invoices will be withheld on any unreturned equipment issued by ICONMA or ICONMA's CLIENT.

In the event that Client shall be adjudged insolvent or bankrupt and ICONMA LLC is ordered to repay to Client any sums paid by Client to ICONMA LLC because such payment is deemed a "preferential payment" under the United States bankruptcy laws or similar state insolvency laws, Contractor shall promptly upon demand pay to ICONMA LLC any sums that were paid by ICONMA LLC to Contractor that comprise, in whole or part, such preferential payment.  In the event there are payments pending that are deemed "preferential payment" ICONMA LLC will withhold payment from Contractor.

### Section 3.03
If Consultant has expenses for which they expect reimbursement, they must obtain pre-approval, in writing, by ICONMA.  All expenses related to travel and temporary living at the regular place of work shall be the sole responsibility of Contractor unless otherwise agreed to, in writing, by the parties.

### Section 3.04
Contractor shall maintain complete and accurate accounting records to support and document all charges.  Such records shall be retained for a period of at least three (3) years following completion of the services.  ICONMA (or an accounting organization retained by ICONMA) shall have access to such records, upon reasonable notice for purposes of audit, for so long as such records are required to be maintained.

## Article IV.  Confidential Information

Through this relationship, Contractor and their Consultants may be exposed to and entrusted with a great amount of confidential information concerning, among other things, ICONMA's (1) customer, clients, contacts and prospects; (2) personnel resources and training techniques; (3) business, management, pricing, advertising, fee information, cost information and financial structures; (4) information and lists concerning referral sources, and; (5) other data pertaining to operations.  Such information is highly confidential and represents the property

| Initials | |
|----------|--|

and trade secrets of ICONMA.

ICONMA and Contractor (hereinafter referred to as "the Parties") acknowledge that if this confidential information was divulged to, or otherwise used by, anyone outside of ICONMA, it would cause irreparable harm and financial loss to ICONMA  Therefore, Contractor agrees  warrants that during the period of this Agreement, or at any time thereafter, neither they nor their Consultants will divulge to any other person, firm, corporation, either directly or indirectly, whether obtained before, during or after their association with ICONMA.

## Article V.   Non-Compete Agreement

**Section 5.01**
Scope of Restraint.  Contractor hereby agrees that neither they nor their employees or Consultants shall, directly, or indirectly:

a) induce, solicit, divert or take away the CLIENT;

b) induce, solicit, divert, take away or encourage CLIENT to obtain services from anyone other than ICONMA;

c) induce, solicit, divert, take away, any employee and/or ICONMA Consultant (defined as a independent contractor or consultant/employee of an ICONMA sub-vendor with whom ICONMA has contracted to provide services) of ICONMA to become an employee of, be the agent for, become affiliated with or be a consultant to, any other business, organization or entity other than ICONMA;

d) request or advice CLIENT to withdraw, curtail or cancel such CLIENT' s business or affiliation with ICONMA or request or advise any ICONMA Employees and/or ICONMA Consultants to withdraw, curtail, terminate or cancel their employment or association with ICONMA;

e) disclose to any person, firm, corporation or any other business entity the names or addresses of CLIENT or Employees and/or ICONMA Consultants of ICONMA

**Section 5.02**
Contractor Acknowledgment: Contractor acknowledges and understands that its consultants may develop certain relationships with representatives of ICONMA's CLIENT, which may lead to an awareness or knowledge of other services desired by said CLIENT.  It is critical that Contractor not interfere with this ICONMA business opportunity or make any attempt to eliminate ICONMA from servicing its CLIENT.

**Section 5.03**
Duration: Contractor does hereby agree to restrain from those activities enumerated in Section 5.01 during the term of this Agreement and for twelve (12) months after the termination of this Agreement.

| Initials | |
|---|---|

## Section 5.04

Injunctive Relief: Contractor acknowledges that ICONMA expends considerable time, money and resources in: recruiting, training and developing the skills of its employees; developing business relationships with its CLIENT so as to improve the good will of ICONMA; establishing and maintaining close business relationships between the Employees and ICONMA's CLIENT; and obtaining, compiling and developing confidential CLIENT lists, various internal computer reports and other proprietary business information not readily available to the public or through other sources. Contractor acknowledges that ICONMA is entitled to protect its investment in the foregoing and to keep the results of its efforts for its exclusive use. As irreparable damage will result to ICONMA in the event of a threatened or actual breach of any of the provisions of this Agreement, in the event of a threatened or actual breach, in whole or in part, of the provisions of this Agreement, ICONMA shall be entitled to injunctive relief restraining Contractor from such a breach in addition to any and all other legal or equitable remedies and damages available to ICONMA. Contractor acknowledges that an adequate remedy at law does not exist. Should injunctive relief become necessary to enforce this Agreement, Contractor shall be liable for the payment of the attorney fees incurred by ICONMA in seeking the injunctive relief.

## Section 5.05

Damages: If Contractor, at any time within the time period referenced in Section 5.03, directly or indirectly services CLIENT (as defined in Section 5.01), they shall immediately purchase from ICONMA the goodwill associated with such CLIENT. In view of the difficulty in evaluating goodwill, it is hereby agreed that the price of said goodwill shall be measured by and equal to the total billings ICONMA sent CLIENT during the twelve (12) month period (or what it would be on an annualized basis) immediately preceding the date of termination of this Agreement, but in no event, less than Five Thousand ($5,000.00) Dollars for each such CLIENT. It is mutually agreed that this amount will be paid by Contractor to ICONMA over a one (1) year period of time with 20% down and the balance in equal payments, including interest at prime interest rate.

## Section 5.06

Severability: It is intended that the subparagraphs of Article 5 shall be separable, and if the restraint in one or more of said subparagraphs shall be held to be invalid by a court of final, competent jurisdiction, this Paragraph shall be considered to be amended to exclude any such invalid subparagraphs or portions thereof held invalid, and there shall be substituted there for the maximum permissible restraint, it being the intent of the parties hereto to give the maximum permitted effect to the restrictions set forth herein. Contractor agrees that the confidentiality provisions in Article 4, the scope of restrictions in Section 5.01 and the time limitations in Section 5.03 are necessary for the protection of ICONMA; however, if a court of competent jurisdiction finds them invalid, Contractor agrees to any reduced confidentiality, time or scope limitations that would not be held invalid.

## Section 5.07

ICONMA agrees not to solicit for employment or employ any consultant introduced to ICONMA by Contractor for an engagement during the term of that engagement and for a period of one (1) year following the engagement. However, if the consultant elects to leave the employment of the Contractor on his/her own accord, before the completion of the terms of this engagement, ICONMA has the first right to hire that consultant directly or indirectly, to facilitate the fulfillment of the terms of this engagement and any extensions thereof. This clause shall not be applicable if the terms of engagement are "Contract to Hire", in which case the consultant will join as a full time employee of the ICONMA or ICONMA'S CLIENT as per the terms of engagement. In the event ICONMA'S CLIENT offers fulltime employment to the Contractor's employee or consultant, Contractor agrees to release employee or consultant from all non-compete agreements.

## Section 5.08

Non-Conflict of Interest

A conflict of interest arises when interests or activities appear to influence, or may influence, your ability to act

| Initials | |
|---|---|

in the best interests of ICONMA or ICONMA's Client. ICONMA further defines "Conflict of Interest" where a person or business entity has an unfair competitive advantage because of relationships with our client and its employees. ICONMA will not do business with an organization if they have "Conflict of Interest" with regards to the following:

- Owners cannot work as an employee or consultant, or in any other capacity, whether paid or unpaid, for the Client or business partner. Exceptions – if they are the only contractor working through their company at client site.
- Owners or Directors or Officers or Employees directly or indirectly having any financial arrangements with the Client or Client's current employees.

In the event Contractor is found breach of the above statements; Contractor will be liable for the financial damages and immediate termination of the agreement between both parties.

## Article VI. Performance at Work

Contractor represents that its Consultants possess the training, skills, and expertise necessary to perform the consulting services required by this Agreement in a competent and professional manner. Contractor's Consultant shall follow CLIENT's policies, if any, in order to avoid being disruptive of CLIENT's personnel, systems, procedures and working environment. Contractor agrees that its consultant shall use their training, skills and expertise to professionally and timely satisfy the project and all tasks and milestones thereof. ICONMA is authorized to contact, with regard to performance and/or status, the CLIENT and can request project status information from the CLIENT and/or the Contractor's Consultant at any time.

### Section 6.01

Warranty Period, the warranty period is within two (2) weeks of the Contractor's consultant's initial start date. If Contractor is notified that their consultant's performance is unsatisfactory or they leave the project within two (2) weeks of the initial start date, Contractor will cancel all charges for that warranty period.

## Article VII. Term and Termination

### Section 7.01

Subject to the other provisions of the Article 7, the term of any Addendum (Statement of Work) shall be set forth therein.

### Section 7.02

This Agreement may be terminated by either party, without notice, immediately upon the occurrence of any of the following events:

- (a) the other party's material breach of any of its material obligations hereunder and failure to remedy such breach (if remediable) within a term of ten (10) business days from the date of written notice of the breach from the party exercising its right to terminate, or upon a later time if mutually agreed upon by the parties;
- (b) subject to applicable law, any assignment by the other party for the benefit of its creditors, the inability of the other party to pay its debts as they fall due, the appointment of a receiver for or any execution levied upon all or substantially all of the other party's business or assets, or the filing of any petition for voluntary or involuntary bankruptcy or similar proceeding by or against the other party; or
- (c) the other party's dissolution or liquidation;
- (d) Contractor or Consultant solicits any ICONMA employee; Contractor or Consultant solicits any individual of ICONMA by unethical means for possible employment; Contractor solicits ICONMA's CLIENT for providing services;

| Initials | |
|---|---|

## Section 7.03

Either party may terminate this Agreement at any time, for any reason, by giving two weeks written notice to the other party. In the event of such termination, any Statement(s) of Work already executed will remain unaffected and the Contractor shall be paid for services actually provided as set forth in the Addendum (Statement of Work), that meet specifications set forth therein.

## Section 7.04

ICONMA may terminate the services of the Contractor's Consultant, as defined in the Addendum (Statement of Work) for performance reasons without notice. If an assignment is terminated for reasons other than performance by the Client, Contractor is entitled to payment only for services performed by the Contractor's Consultant through the last actual day work was performed. If an assignment is terminated by ICONMA for a reason other than poor performance, ICONMA agrees to use its best efforts to provide the Contractor's Consultant ten (10) working days notice of assignment termination.

## Article VIII. Indemnification

### Section 8.01

Contractor agrees that it is an independent contractor acting on its own account. Contractor agrees that neither its Consultant nor any of its personnel are employees of ICONMA or ICONMA's CLIENT, or are entitled to any benefits provided or rights guaranteed by ICONMA or ICONMA's CLIENT, or by operation by law, to their respective employees. Contractor is responsible for the payment of direct compensation and benefits accruing to its employees as a result of providing services hereunder, as well as any applicable withholding, payment and reporting of income, social security and other payroll taxes, workers' compensation, disability benefits, or any others which would legally or customarily be the responsibility of Contractor.

### Section 8.02

Contractor shall indemnify and hold ICONMA and ICONMA's CLIENT harmless for any claims, actions, causes of actions, liabilities, levies and/or judgments, (including any actual attorney fees incurred) pursued and/or received by Contractor consultant against ICONMA and/or ICONMA's CLIENT.

### Section 8.03

Contractor shall indemnify and hold ICONMA and ICONMA's CLIENT harmless for any and all losses, liabilities, damages, judgments, claims, costs and expenses (including actual attorney fees incurred), incurred by ICONMA and/or its CLIENT, relating to personal injury, death or tangible property damage which results from and to the extent of:

   (a) Contractor's alleged willful or negligent act;

   (b) Contractor's alleged failure to comply with federal, state, and local taxes and/or contributions during the term of this agreement or pursuant to any assignment;

   (c) Contractor's alleged failure to comply with federal, state, and local laws regarding employment, including wage-hour, equal employment opportunity, and immigration laws, or

   (d) Contractor's failure to ensure all agreements and forms pursuant to this Agreement have been supplied and/or signed.

## Article IX. Workers Compensation Insurance

Contractor will, at its own expense, provide and keep in full force and effect during the term of this Agreement Workers Compensation Insurance. Certificates evidencing such insurance shall be furnished to ICONMA prior to commencement of work and are to provide thirty (30) days notice of material change or cancellation.

## Article X. General Provisions

| Initials | |
|---|---|

Section 10.01

This Agreement is a personal services contract. Neither this Agreement nor any right or interest created hereunder shall be assignable by ICONMA or Contractor to any person or entity without the prior written approval of the other party's President.

Section 10.02

CLIENT shall be a third party beneficiary to this Agreement with respect to the enforcement of Contractor's obligations under Article 6.

Section 10.03

If any provision in this Agreement is found by any court of competent jurisdiction to be invalid or unenforceable, the invalidity of such provision shall not affect the other provisions of this Agreement, and all provisions not affected by such invalidity shall remain in full force and effect.

Section 10.04

The waiver by either party of a breach or default in any of the provisions of this Agreement by the other party shall not be construed as a waiver of any such succeeding breach of the same or other provisions; nor shall any delay or omission on the part of either party to exercise or avail itself of any right, power or privilege that it has or may have hereunder operate as a waiver of any breach or default by the other party.

Section 10.05

This Agreement constitutes the entire agreement between the parties and supersedes all prior agreements between the parties, whether written or oral, relating to the same subject matter. No modification, amendments or supplements to this Agreement shall be effective for any purpose unless in writing, signed by each party. The relationship established hereby between the parties hereto shall be governed solely by the terms and conditions of this Agreement.

Section 10.06

This Agreement has been executed in, and shall be construed and enforced in accordance with the laws of, the State of Michigan.

Section 10.07

ICONMA and Contractor: (a) irrevocably submit to the jurisdiction of any Michigan court with jurisdiction over Troy, Michigan in any action arising out of this Agreement, and (b) agree that all claims in any action may be decided in this court. In the event of litigation, the prevailing party shall also be entitled to collect any reasonable attorney's fees and costs it actually incurred in the litigation.

Section 10.08

Any and all notices, requests, demands and other communications permitted or required hereunder shall be in writing and shall be deemed given, if personally delivered or if mailed, postage prepaid, certified or registered, return receipt requested, to the parties as follows, or at such other addresses as they may indicate by written notice given as herein provided:

ICONMA, LLC
Attn: Kim Mexico
850 Stephenson Highway
Suite 612
Troy, MI 48083

Attn: _____
_____
_____
_____

| Initials | |
|---|---|

**Section 10.09**

The headings contained in this Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.

**Section 10.10**

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

**Section 10.11**

Any claim, action or suit relating to this Agreement must be commenced within six months from the Contractor's final day of work for ICONMA.

**Section 10.12**

The Parties acknowledge that each of them has equally participated in the final wording of this Agreement. Accordingly, the parties agree that this Agreement shall be construed equally against each party, and shall not be more harshly construed against a party by reason of the fact that the particular party's counsel may have prepared this, the final version of the Agreement between the parties hereto.

**Section 10.13**

This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall be considered one and the same agreement.

**Section 10.14**

By signing this Agreement, Contractor warrants and expressly represents to ICONMA that to the best of its knowledge, information and belief, it is not bound by any other agreement, whether written or oral, which would preclude it from entering into this Agreement and rendering services for ICONMA. Contractor warrants and represents that it will not utilize, in connection with this Agreement, any materials, confidential business information or trade secrets which may be construed as confidential or proprietary to any other company. In the event Contractor breaches this warranty, Contractor agrees to hold ICONMA harmless from any damages (including attorney fees) incurred by ICONMA in defending any lawsuit brought against it due to this Agreement or on account of any material, information, or trade secrets improperly used by Contractor.


**ICONMA, LLC.**                                **CONTRACTOR**

Signature: _____      Signature: _____
Name: _____      Name: _____
Title: _____      Title: _____
Dated: _____      Dated: _____

## <u>Consulting Services Addendum</u>
## <u>(Statement of Work)</u>

In accordance with the Consulting Services Agreement (Vendor Contract) signed between ICONMA, LLC (hereinafter referred to as "ICONMA") and <u>Vinsys Information Technology Inc</u> (hereinafter referred to as "Contractor") effective on <u>April 4, 2012</u>, it is agreed as follows:

| | |
|---|---|
| Consultant Name: | Syed Iftikhar |
| Hourly Rate: | $72/hr inclusive of all expenses** |
| Duration: | 10 months* |
| Start Date: | April 20, 2012 |
| Client: | Capital One |
| Location: | Richmond, VA |

Contractor's Consultant must be an employee (W2) of Contractor, multiple layers or further sub-contracting is strictly prohibited, completed I9 must be submitted prior to the start of any project. Contractor must submit to ICONMA a copy of Consultant's E-Verify within three days of Consultant's start date.

**Markup compliant clause - the markup between your contractor's actual pay rate/salary (not including any benefits, expenses, etc) and the stated Hourly Rate cannot exceed 21%. Contractor must provide a pay-stub to ICONMA via email or fax every month to prove compliance. Payments are contingent upon receiving the pay-stub monthly at the 21% markup. Stated Hourly Rate will be automatically reduced if not compliant with 21% markup. Email: apinfo@iconma.com, Fax: (800) 489-8046.

Forty five (45) day guarantee, contractor shall not be entitled to any payment from ICONMA for costs (agreed upon hourly rate) incurred by Contractor during any of its personnel's initial two (2) week period of services to ICONMA or ICONMA's CLIENT, if ICONMA notifies Contractor no later than forty five (45) days after commencement of the project, that such services fail to meet ICONMA or ICONMA CLIENT's performance expectations, including but not limited to Contractor's personnel quitting the project.

*2% tenure discounts will apply after 6 months duration.

**ICONMA, LLC.**                               **CONTRACTOR**

Signature: _____      Signature:_____
Name: _____      Name: _____
Title: _____      Title: _____
Dated: _____      Dated: _____

Thanks,


Alan
Vinsys Information Technology Inc.
Tel  : 703-349-7086
Mobile : 703-371-4120
Fax : 703-880-7557
alan@vinsysinfo.com
www.vinsysinfo.com


**From:** Vinsys [mailto:schanamolu@vinsysinfo.com]
**Sent:** Wednesday, April 04, 2012 8:30 PM
**To:** kim@iconma.com
**Cc:** 'Alan-Vinsys'
**Subject:** FW: ICONMA Documents for Vendors (Syed Iftikhar)


Kim,


Sorry we don't agree with such kind of clauses. We don't send paystubs to our clients.


Rates confidential matter between Vinsys and its employees.


Net payment terms are Only 30 days Invoice and 15 days Payment. None of these things are not
negotiable. Pl let us know other wise we will not move further

[Quoted text hidden]

4 attachments


image001.jpg
58K

 fw9.pdf
110K

Vinsys Information Technology Inc Addendum (rev. 04-04-12).doc
33K


PLAINTIFF'S
EXHIBIT

Vinsys Information Technology Inc Contract (rev. 04-04-12).doc
97K

**VINSYS**
Information
TECHNOLOGIES

### ~~Acceptance Letter~~

This Agreement is made between Vinsys Information Technology Inc, ("Sub Contractor") with principal place of business at address **"12020 Sunrise Valley drive, Suite 100, Reston, VA -20191"** and **SYED SOHAIL IFTIKHAR** ("Consultant"), with a principal place at address

1. Vinsys information Technology Inc, has introduced Syed Sohail Iftikhar(Consultant), , to one or more Clients (viz, **ICONMA** Client and **CAPITAL ONE** End client ) of Vinsys Information Technology Inc for the purpose of technical and general evaluation (the "Interview"). The Client has interviewed and selected Syed Sohail Iftikhar for the requirement, Vinsys Information Technology Inc made an offer to Syed Sohail Iftikhar (Consultant) for the Contract services of Client.

2. For a period of One (1) year following the date of the joining or the last date of his Services at the client, Syed Sohail Iftikhar (Consultant) shall not directly or indirectly approach the Client or end client for business or employment.

3. The Syed Sohail Iftikhar (Consultant) shall not use or disclose to anyone any confidential information regarding the Contractor's introduced client, learned during discussions.

4. I Syed Sohail Iftikhar (Consultant) by signing this agreement , the Candidate agree to the following terms:
   - ☑ Hourly billing rate agreed upon for this position is $50(Fifty only) per hour, all-inclusive (All benefits included Health Insurance etc) on W2.
   - ☑ I Syed Sohail Iftikhar (Consultant) shall be available for work on behalf of Vinsys Information Technology Inc no later than **Two Weeks** after the offer is accepted. Consultant acknowledges that the actual start date will be determined by Client.
   - ☑ This Offer is contingent, once you have your valid TN Visa, this Offer is active.

5. Because monetary damages are difficult to ascertain and are likely to be inadequate to compensate Vinsys Information Technology Inc for any breach of this Agreement, Consultant agrees that Vinsys Information Technology Inc shall be entitled to injunctive relief (both temporary and permanent) for any breach or proposed breach of this Agreement. In addition, Consultant shall be liable for any damages, costs and fees incurred by Vinsys Information Technology Inc related to any breach of this Agreement.

6. Syed Sohail Iftikhar (Consultant) also agrees to indemnify and hold harmless Vinsys Information Technology Inc for any and all losses, costs and other liabilities incurred, including costs and fees related to any breach of the obligations set forth herein.

7. This Agreement shall be governed and construed in accordance with the law of Common Wealth of Virginia. The parties hereto acknowledge that this Agreement was negotiated in Common wealth of Virginia and each agrees and consents that should litigation be instituted, it shall be instituted in the Courts of Common Wealth Of Virginia and each further consent to the jurisdiction of those Courts.

| Vinsys Information Technology Inc | Syed Sohail Iftikhar<br>SSN: 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<br>Signature |
|---|---|
| Signature<br>Print Name: | Print Name : *SYED IFTIKHAR* |
| Title:<br>Date: 04/04/2012 | Title: *CONTRACTOR*<br>Date: 04/04/2012 |

*Fax to VINSYS INFORMATION TECHNOLOGY INC at 703 880 7557 or email the scanned copy to the concerned recruiter.*

Vinsys Information Technology Inc
12020, Sunrise Valley Drive, Suite#100
Reston, VA-20191

Phone: (703) 371-4100
Fax: (703) 880-7557
Email: hr@vinsysinfo.com

www.vinsysinfo.com
*Efficient IT solutions for the modern enterprise*





April 04 2012

To the US Immigration and Naturalization Services

Dear Sir or Madam:

### Re: TN Petition for Syed Sohail Iftikhar

We are writing to request that Syed Sohail Iftikhar be granted TN status for the position of SYSTEMS ANALYST.

Mr. Iftikhar is a CANADIAN CITIZEN. We would like to employ Mr. Syed Sohail Iftikhar as a SYSTEMS ANALYST (VM Ware), reporting to Sreedhar Chanamolu, HR Director. This NAFTA qualifying position is described in the DOT category "030.167-014 SYSTEMS ANALYST (profess. & kin.)".

In this position, Syed Sohail Iftikhar will be required to perform the following duties:

- Analyze end-user requirements, document and develop solutions using computer technology
- Write detailed requirements which will then be developed into specific technical requirements using computer technology
- Prepare time and cost estimates, and monitor projects using standard project management tools.
- Perform day-to-day run-the-engine tasks to ensure that the Virtual Desktop Infrastructure (VDI) is working appropriately and highly available to the customer base; and that any issues are being proactively resolved.
- Act as third level support within the incident management process for the VDI platform.
- Perform routine capacity planning and demand management for the VDI Platform.
- Perform all configuration management processes needed to stay compliant with Client guidelines.
- Develop and work with management to implement training plans for the customer and WTS personnel.
- Develop and present business cases and returns on investment as required.
- Develop and present project plans, desktop budgets, or charter/scope as required.

This position requires an individual with a related degree. Based on Syed Sohail Iftikhar's education and experience, he is ideally suited for this position. He obtained a bachelor's degree in Computer Information Systems from University of Houston, Clear Lake, Texas in 2001. We believe Mr. Syed qualifies for TN status, as outlined in section 214(e) of the North American Free Trade Agreement. We believe Mr. Syed meets the requirements to be admitted as a SYSTEMS ANALYST with the duties which are outlined and described by the Department of Labor's Dictionary of Occupational Titles (DOT). He is a professional as outlined in the regulations 8 CFR 214.6.

We require his services temporarily for a one year period, starting 04/19/2012 and ending no later than 04/18/2013 contingent upon INS approval of this petition. Once this temporary employment has completed we fully expect Syed Sohail Iftikhar to return to Canada. Mr. Syed's employment will

Vinsys Information Technology Inc
12020, Sunrise Valley Drive, Suite#100
Reston, VA-20191

Phone: (703) 371-4120
Fax: (703) 880-7557
Email: schanamolu@vinsysinf

www.vinsysinfo.com
*Efficient IT solutions for the modern enterprise*





comply with all applicable local, state, and federal laws. He will earn an annual salary of $80,000 plus standard company benefits as outlined in his employee handbook. There are currently no labor disputes, nor are any anticipated at Vinsys Information Technology Inc. Mr. Syed has provided us evidence that he is a Canadian citizen and will provide you original documents showing proof of citizenship and proof of suitable education for this position.

VINSYS Information Technology, Inc. was established in November 2003. VINSYS offers our clients a full range of professional IT services from custom software development, to quality assurance to project management. Our consultants, developers, and engineers have expertise in managing the entire software development process across many different platforms and environments. Our clients span many industries including financial services, manufacturing, healthcare, and insurance. We have a proven track record in helping them maximize their IT investments and achieving their business goals.

Our clients hire and re-hire us because we provide some of the most high performing, highly skilled IT professionals in the industry. Our employees are our major strength, which means our clients are benefited from a well trained, conscientious, and diligent workforce. VINSYS employees are extremely talented and experienced in the IT industry. Our people can resolve the most critical IT issues for our clients. More than half of our employees have certifications in their respective domain areas. We ensure that our employees are well equipped to provide front-range turnkey solutions for them. Our employees are experienced in implementing proven standard software processes and practices to ensure quality and timely delivery of projects. Above all, our employees possess high ethical and moral standards.

VINSYS offers solutions that cater to the complete lifecycle of Information Technology applications. From legacy systems to e-enhancement, application development to maintenance, re-engineering and migration to enterprise solutions services—we cover the entire spectrum of software solutions and services. We offer our clients the flexibility of solutions on a range of platforms using innovative technologies and techniques. We also create processes and define methodologies that enable re-usability and reduce delivery life-cycles. Our employees are committed to our client's success.

VINSYS ultimate goal of total customer satisfaction will be achieved by producing the most valuable accounts receivable management software products on the market, featuring the best combination of dependable software, reliable service and competitive pricing

Should any further information be required, I can be reached at (703) 371 4120 (during regular business hours).

Very truly yours,

_C+ Sreedhov_  04/04/2012

SREEDHAR CHANAMOLU,

HR DIRECTOR

Vinsys Information Technology Inc
12020, Sunrise Valley Drive, Suite#100
Reston, VA-20191

Phone: (703) 371-4120
Fax: (703) 880-7557
Email: schanamolu@vinsysinfo.com

www.vinsysinfo.com
*Efficient IT solutions for the modern enterprise*

4) Vinsys started negotiating contract with chris Williams (ICONMA).




PLAINTIFF'S EXHIBIT

**Shawn Whittaker**

| | |
|---|---|
| Subject: | FW: ICONMA Contract & Exhibit A - Syed Iftikhar (Non Compete Issue: Stealing our resource by Iconma Inc) |
| Attachments: | image001.jpg; Syed Iftikhar Contract (rev.04-05-12).doc; Syed Iftikhar Exhibit A (rev.04-05-12).doc |

---------- Forwarded message ----------
From: Kim Mexico <kim@iconma.com>
Date: Thu, Apr 5, 2012 at 4:07 PM
Subject: ICONMA Contract & Exhibit A - Syed Iftikhar
To: syedvmware@gmail.com
Cc: cwilliams@iconma.com, cwilliamsRM@iconma.com

Good Afternoon,

Attached you will find our standard Contract and Exhibit A, please sign and return to my attention.

Thanks,
Kim

Kim Mexico

Operations Manager



Ph: (248) 583-1930 x. 224

Toll Free: (888) 451-2519 x. 224


PLAINTIFF'S
EXHIBIT
G

Fax: (248) 583-1929

Fax: (800) 489-8046

kim@iconma.com

www.iconma.com

| Initials | |
|---|---|

# ICONMA EMPLOYMENT CONTRACT

This employment contract ("Agreement") is entered into this <u>April 5, 2012</u> between ICONMA, LLC, ("ICONMA") and <u>Syed Iftikhar</u> ("Employee").

WHEREAS, ICONMA is involved in the highly competitive business of web consulting, software development, information technology consulting, and recruiting and supplying engineers, programmers, computer consultants, management consultants, technical, data processing and other technical personnel on a contract basis to various businesses, and organizations; and

WHEREAS, Employee seeks employment with ICONMA in accordance with the terms and conditions of this Agreement; and

THEREFORE, in consideration of the mutual promises contained herein, ICONMA and Employee agree as follows:

## Article I.  Services to be Performed

ICONMA agrees to retain Employee, and Employee agrees to work for ICONMA. Employee's start date shall be defined in Exhibit A.  ICONMA will determine Employee's precise duties and responsibilities.  Employee agrees to provide their best efforts in completing the work tasks assigned by ICONMA.  Employee also agrees that ICONMA has the sole right to modify all job assignments and business concerns.

Employee understands, acknowledges and agrees that they will not be considered an employee of ICONMA's Client, common-law or otherwise, for any reason.  Employee further understands, acknowledges and agrees that they are not eligible to participate in or receive any benefits under the terms of any of ICONMA's Client's pension plans, savings plans, health plans, dental plans, vision plans, disability plans, life insurance plans, stock option plans, or any employee benefit plan sponsored by ICONMA's Client.

## Article II. Compensation
### Section 2.01
ICONMA shall pay Employee a wage rate in accordance to Exhibit A.  Employee shall receive compensation at this rate for all approved billable time and overtime as approved by ICONMA's Client.  Employee's compensation shall be based upon Employee's strict adherence to ICONMA's time reporting instructions.

### Section 2.02
Employee agrees to devote all of their time, attention, skills and best efforts to the faithful performance of the duties of their position as may be assigned to them from time to time at the sole discretion of ICONMA.  Employee understands that they are being employed in a fiduciary capacity requiring the highest degree of trust and confidence.  Full-time employment means

regularly-established working/business hours plus any additional time as is required in order to effectively accomplish the duties and responsibilities assigned to Employee

## Section 2.03
Employee agrees that ICONMA may deduct, subtract or set-off from any wages due Employee, any loans ICONMA has made to Employee or any other monies which Employee owes ICONMA. Employee also agrees that wages may be withheld for any unreturned equipment provided by ICONMA or ICONMA's client.

# Article III. Performance at Work
## Section 3.01
Employee represents that they possess the training, skills, and expertise necessary to perform the services required by this Agreement in a competent and professional manner. Employee agrees that they shall follow ICONMA's policies, if any, in order to avoid being disruptive of ICONMA's personnel, systems, procedures and working environment.

# Article IV. At Will Employment
## Section 4.01
Your employment with ICONMA is "at will". Employee or ICONMA may terminate the employment relationship at any time, with or without notice, with or without cause. Notwithstanding any other term of this Agreement or policy of ICONMA, either of the Parties may terminate the employment relationship at will.

# Article V. Confidential Information
Employee may be exposed to and entrusted with a great amount of confidential information as an employee of ICONMA, concerning, among other things, ICONMA's (1) customers and clients, (2) business prospects, business opportunities and business contacts/key personnel, and (3) other proprietary and confidential information which is not known by the public. Employee agrees that this information is confidential and proprietary to ICONMA. Employee shall not divulge this information to any outside parties (both during this course of this Agreement and after its termination), nor shall they utilize this information for any purposes other than in performing their duties and responsibilities pursuant to this Agreement.

# Article VI. Work Subject to ICONMA Ownership
## Section 6.01
All materials, ideas, concepts, knowledge and techniques first developed during the performance of this Agreement in whole or in substantial part by Employee shall belong to ICONMA or its designee. ICONMA or its designee shall own all U.S. and international copyrights therein except to the extent they consist of preexisting works. All materials first created in the course of performance of the services by or on behalf of ICONMA and used or incorporated in the preparation of work shall be considered work made for hire owned by ICONMA or its designee. If any such works may not, by operation of law, be considered work made for hire (or if ownership of all right, title and interest of the copyrights therein shall not otherwise vest exclusively in ICONMA), Employee agrees to assign, and hereby assigns, without further

Rev 03/20/03

| Initials | |
|---|---|

consideration, the ownership of all U.S. and international copyrights, registrations, and any other protection available in the foregoing.

**Section 6.02**
Employee agrees to and hereby assigns to ICONMA, or its designee, royalties with all United States and foreign patent rights in and with respect thereto, and Employee agrees, upon demand to execute or cause to be executed all appropriate patent applications securing United States and foreign patents in or to all such inventions, improvements, or discoveries, and to do, execute and deliver any and all acts and instruments of assignments that may be necessary or proper to vest all such inventions, improvements or discoveries and patents (both United States and foreign) in ICONMA or its nominee or designee, and to enable ICONMA or its designee to obtain all such letters patent, and that Employee will render to ICONMA or its designee all such assistance as may be required in the preparation and prosecution or defense of all interferences which may be declared involving any of said patent applications, and all other proceedings referred to, the cost of which shall be borne by ICONMA.

**Section 6.03**
Notwithstanding the foregoing, Employee retains the right to utilize the general knowledge, skill and experience which it may develop or acquire in connection with the services provided to ICONMA pursuant hereto and to continue to utilize said general knowledge, skill and experience in offering its services, goods and/or products to third parties.

# Article VII. Compliance with Laws
ICONMA and Employee agree to comply with all applicable federal, state, and local laws, ordinances, regulations, and codes in the performance of this Agreement.

ICONMA, LLC is an Equal Opportunity Employer, and does not discriminate on the basis of race, sex, age, disability, religion, sexual orientation, color, ancestry, handicap, national origin, veteran status or any other characteristics protected by law with respect to employment decisions. ICONMA, LLC neither affiliates knowingly with nor grants recognition to any individual, group, or organization having policies that discriminate on the basis of race, sex, age, disability, religion, sexual orientation, color, ancestry, handicap, national origin or veteran status consistent with applicable laws and regulations.

# Article VIII. Non-Violation
**Section 8.01**
Employee warrants that to the best of its knowledge, information and belief, it is not bound by any other agreement, whether written or oral, which would preclude it from entering into this Agreement and rendering services for ICONMA.

**Section 8.02**
Employee assures ICONMA that it will not utilize, in connection with this Agreement, any confidential or proprietary information they may possess from prior employers, nor shall their employment with ICONMA violate any non-compete agreement to which they may be subject.

| Initials | |
|----------|--|

If Employee breaches this Article, they hereby agree to indemnify ICONMA and hold ICONMA harmless from any liability asserted by any third-parties.

# Article IX. Non-Competition Agreement

## Section 9.01

Employee hereby agrees that they shall not, directly, or indirectly: (1) solicit, divert or take business from client of ICONMA, or (2) render services, directly or indirectly for ICONMA's client.

## Section 9.02

Employee acknowledges and understands that they may develop certain relationships with representatives of ICONMA's client which may lead to an awareness or knowledge of other services desired by said customer or client. Employee understands that it is critical that they not interfere with this ICONMA business opportunity or make any attempt to eliminate ICONMA from servicing this customer or client.

## Section 9.03

Employee does hereby agree to restrain from those activities enumerated in Section 9.01 and 9.02 from the date of their hire until six months after the termination, for whatever reason, of this Agreement.

## Section 9.04

As irreparable damage will result to ICONMA in the event of a breach of any of the provisions of this Agreement, ICONMA shall be entitled to injunctive relief restraining Employee from such a breach, in addition to any and all other legal or equitable remedies and damages available to ICONMA. Employee acknowledges that an adequate remedy at law does not exist. Should injunctive relief become necessary to enforce this Agreement, Employee shall be liable for the payment of any reasonable attorney fees incurred by ICONMA in seeking the injunctive relief.

## Section 9.05

If Employee, at any time within the time period referenced in Section 9.03, directly or indirectly services any customer or client of ICONMA, they shall immediately purchase from ICONMA that customer's or client's goodwill. In view of the difficulty in evaluating goodwill, it is hereby agreed that the price of said goodwill shall be measured by and equal to the total billings ICONMA sent to them during the contract period immediately preceding the date of termination of this Agreement, but in no event, less than Three Thousand ($3,000.00) Dollars for each such customer or client. It is mutually agreed that this amount will be paid by Employee to the ICONMA over a five (5) year period of time with 20% down and the balance in sixty equal payments, including interest at 7% per annum.

Rev. 01/20/03

| Initials | |
|----------|---|

## Article X.  General Provisions

**Section 10.01**

This Agreement is a personal services contract. Neither this Agreement nor any right or interest created hereunder shall be assignable by Employee or ICONMA to any person or entity without the prior written approval of the other party.

**Section 10.02**

This Agreement is made in the state of Michigan and shall be construed in accordance with the laws of Michigan.  If any provision in this Agreement is found by any court of competent jurisdiction to be invalid or unenforceable, the invalidity of such provision shall not affect the other provisions of this Agreement, and all provisions not affected by such invalidity shall remain in full force and effect.

**Section 10.03**

The waiver by either party of a breach or default in any of the provisions of this Agreement by the other party shall not be construed as a waiver of any such succeeding breach of the same or other provisions; nor shall any delay or omission on the part of either party to exercise or avail itself of any right, power or privilege that it has or may have hereunder operate as a waiver of any breach or default by the other party.

**Section 10.04**

Any captions and headings are purely for the convenience of the reader and shall not be used to interpret or construe this Agreement.

**Section 10.05**

This Agreement represents the entire employment agreement between the parties hereto and supersedes any and all prior agreements or understandings, either written or oral, between ICONMA and Employee.  No modification of this contract shall be valid unless in writing and signed by both of the parties to this Agreement and any waiver by ICONMA of any condition or covenant in this contract shall not be construed as permanent or binding as to any condition or covenant occurring or existing in the future.

**ICONMA, LLC**

Signature: _____

Name: _____

Title: _____

Date: _____

**EMPLOYEE**

Signature: _____

Name: _____

Date: _____

## Exhibit A

Employment Agreement between ICONMA, LLC, and Syed Iftikhar

Start Date: April 20, 2012

Position: VMware Systems Engineer

Responsibilities: As specified by Iconma, LLC for Capital One's projects.

Location: Richmond, VA

**Hourly Rate:**
- You will be paid $32.75/hr for regular hours up to 8 hrs a day. You will also be paid a per diem of $22.25/hr for regular hours up to 8 hrs a day. Overtime hours (above 8 hrs a day) will be paid at $55/hr. Both are payable bi-weekly. Applicable federal and state taxes will be deducted from your gross earnings.
- For projects lasting longer than a year, you will no longer be eligible for per diem.

**Benefits:**
- Payroll is payable bi-weekly.
- Life Insurance policy $15, 000
- Additional Benefits
  - ☐ 401(k)
  - ☐ Health Insurance and Dental Insurance (Employee Only)
  - ☒ Decline Health Insurance and Dental Insurance, I understand that in the future if I should wish to enroll in the Health and Dental Insurance program I can do so during open enrollment or if I have a qualifying event, I will be responsible for the entire insurance premium.
- Applicable federal and state taxes will be deducted from your gross earnings. In addition, ICONMA will make the appropriate deductions for any of the selected Additional Benefits.

_____          _____
Employee Signature                                              Date


_____          _____
ICONMA Representative                                        Date

# WHITTAKER & ASSOCIATES, P.C.

1010 ROCKVILLE PIKE, SUITE 607
ROCKVILLE, MARYLAND 20852
PHONE (301) 838-4502
FAX (301) 838-4505

SHAWN C. WHITTAKER, ESQ. (MD, VA, DC)
SHAWN@WHITTAKER-LAW.COM

WWW.WHITTAKER-LAW.COM

EVE M. GROBOWSKI, ESQ. (MD)
EVE@WHITTAKER-LAW.COM

April 18, 2012

Syed Sohail Iftikhar
485 Pringle Drive, Unit # 18
Milton, Ontario L9T0J2

ICONMA
Attn: Chris Williams / Kim Mexico
850 Stephenson Highway, Ste. 612
Troy, MI 48083

Capitol One
Attn: Darren McMahon
15000 Capitol One Drive
Richmond, VA 23238

VIA ELECTRONIC MAIL AND FEDERAL EXPRESS

Re:   Vinsys Information Technology, Inc. ("Vinsys")/Syed Sohail Iftikhar

Dear Mr. Iftikhar, Mr. Williams, and Mr. McMahon:

Please reference the above-noted matter and be advised that the undersigned is legal counsel to Vinsys.

As you are aware, Mr. Iftikhar entered into the attached Agreement with Vinsys which prevents Mr. Iftikhar from being employed directly or indirectly with either ICONMA or Capitol One. Despite the Agreement, Mr. Iftikhar entered into discussion with ICONMA to work directly for Capitol One and is scheduled to begin work with ICONMA on the Capitol One Project. Consequently, Mr. Iftikhar is in violation of his Agreement with Vinsys. As such, Vinsys intends to initiate legal action against Mr. Iftikhar to enforce the Agreement and to seek damages due to Mr. Iftikhar's breaches of the Agreement.

PLAINTIFF'S EXHIBIT

# WHITTAKER & ASSOCIATES, P.C.

ICONMA was aware of the Agreement prior to entering into discussions with Mr. Ifthikar. Despite ICONMA's awareness of the Agreement, ICONMA chose to deal directly with Mr. Ifthikar, thus aiding and abetting Mr. Ifthikar's breaches of the Agreement. If necessary, Vinsys will seek legal recourse against ICONMA.

Capitol One has also been made aware of the Agreement. Despite being made aware of the Agreement, Capitol One continues to employ ICONMA and indirectly Mr. Iftikhar. Thus, Capitol One is also aiding and abetting Mr. Ifthikar's breaches of the Agreement and ICONMA's tortious conduct.

Vinsys requests that ICONMA retain Mr. Iftikhar through Vinsys as already planned and negotiated. If ICONMA fails to do sue, Vinsys will seek legal recourse as it deems appropriate.

I look forward to your prompt response and to resolving the instant dispute amicably and without litigation. Do not hesitate to contact me with any further questions or concerns.

Very truly yours,

Shawn C. Whittaker

ENCLOSURE

CC:     Vinsys, Inc.

 

**Home    Living Here    Doing Business    Visiting    Departments & Agencies       Search Site:**

## Case Detail

Case Search  Party Search  Attorney Search



help

| Vinsys Information Technology Inc vs. Syed Sohail Iftikhar, etal. (CL-2013-0018985) | Parties/Attorneys | Actions | Charges |

**Case Information**

Print

Case Title: Vinsys Information Technology Inc vs. Syed Sohail Iftikhar, etal
Case Number: CL-2013-0018985
Subtype: Contract
Filing Date: 12-20-2013
Current Status Date:
Under Advisement Date:
Reinstatement Date:
Case Status: Pending
Last Updated: 12-20-2013 15:51:46

**Vinsys Information Technology Inc vs. Syed Sohail Iftikhar, etal. (CL-2013-0018985)**

**Register of Actions**

Print

| | Date | Judge | ROA Text |
|---|---|---|---|
| Select | 12-20-2013 | No Judge | Plaintiff: Vinsys Information Technology Inc Entry of Appearance/Attorney Retained Shawn C Whittaker |
| Select | 12-20-2013 | No Judge | Complaint Filed |
| Select | 12-20-2013 | No Judge | Filing: Complaint ($100,001 to $500,000) Paid by Whittaker, Shawn C (attorney for Vinsys Information Technology Inc) Receipt number: 0524170 Dated 12/20/2013 Amount: $296.00 (Check) For Vinsys Information Technology Inc (plaintiff) |
| Select | 12-26-2013 | No Judge | Complaint: Issued for Service to Syed Sohail Iftikhar on 12/26/2013; Assigned to SPECIAL PROCESS SERVER. Service Fee of $0.00. |
| Select | 12-26-2013 | No Judge | Complaint: Issued for Service to ICONMA LLC on 12/26/2013; Assigned to SPECIAL PROCESS SERVER. Service Fee of $0.00. Summons mailed to atty in SASE |
| Select | 01-08-2014 | No Judge | Complaint: Served to ICONMA LLC on 1/8/2014. Assigned to SPECIAL PROCESS SERVER. Service Fee of $0.00 - BU (Teresa Imbrunon) |

In compliance with the Code of Virginia, no Adoption or Juvenile Appeal cases are available on CPAN. Please note that cases prior to 2004 may not be available in the Case, Party and Attorney searches of this application. Use the Circuit Court Legacy Search application for case information from October 17, 2004 and older.



EXHIBIT
B

Contact Fairfax County: Phone, Email or Twitter | Main Address: 12000 Government Center Parkway, Fairfax, VA 22035
Technical Questions: Web Administrator

ADA Accessibility | Website Accessibility
Awards | FOIA | Mobile | Using this Site | Web Disclaimer & Privacy Policy | Get Adobe Reader
Official site of the County of Fairfax, Virginia, © Copyright 2013

 Website Feedback  Language Translations